**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**JOHNATHAN WAYNE FRANCKEWITZ,** *

**Plaintiff,** *

**v.** * **Civ. No. DLB-24-372**

**TYRELL WILSON,** *

**Defendant** *

**MEMORANDUM OPINION**

Self-represented plaintiff Johnathan Wayne Franckewitz filed this civil rights action against Warden Tyrell Wilson pursuant to 42 U.S.C. § 1983. Franckewitz alleges that, while he was in pretrial detention at the Baltimore City Booking Intake Center ("BCBIC"), he was denied any opportunity to attend religious services in violation of his First Amendment right to free exercise of religion. Franckewitz also alleges that BCBIC staff did not provide him with a grievance appeal form in violation of his Fourteenth Amendment right to due process. For the reasons stated below, Franckewitz's complaint is dismissed.

## I. Background

Franckewitz alleges the following facts in his complaint, ECF 1, and a document the Court construes as a supplement to his complaint, ECF 4.

On October 21, 2023, Franckewitz was detained pending trial at BCBIC and "anticipated religious services to be offered in reference to church on Oct. 22nd, 2023," a Sunday. ECF 1, at 4. Franckewitz states that services were not offered that day or consistently going forward. *Id.*

On December 8, 2023, Franckewitz filed a grievance complaining about the lack of access to religious services. *Id.*; ECF 4-1, at 2. Franckewitz's grievance also states that he was denied a softcover Bible that a relative purchased for him. ECF 4-1, at 2. In his grievance, Franckewitz

asserted that the failure to provide congregate religious services constituted a violation of his First Amendment right to free exercise of religion. *Id*. Franckewitz also claimed that he suffered spiritually, physically, and mentally. *Id*.

On December 19, 2023, Franckewitz received a response that the grievance was being investigated. ECF 1, at 4; ECF 4-1, at 1. Franckewitz alleges that he inquired about filing an appeal, but every correctional officer he asked about an appeal form said that "they ha[d] never heard of it." ECF 1, at 4. Franckewitz maintains that the refusal to provide him information on how to appeal his grievance is a violation of his right to due process. *Id*. He claims that he waited over 30 business days without any further response and then filed his complaint with this Court. *Id*. He concludes that "the denial of religious services, particularly those of church is ongoing with no end in sight." *Id*. at 4–5. At some point after filing his complaint, Franckewitz was transferred to the Chesapeake Detention Facility ("CDF"). *See Incarcerated Individual Locator*, DPSCS, https://www.dpscs.state.md.us/services/ii-locator.shtml [https://perma.cc/YF5Q-94NV] (last visited Sept. 17, 2025).

Franckewitz alleges that the denial of any opportunity to attend religious services violated his First Amendment right to free exercise of religion. ECF 1, at 4; *see also* ECF 4-1, at 2. Franckewitz also alleges that the failure to provide him with a grievance appeal form violated his Fourteenth Amendment right to due process. ECF 1, at 4. As relief, Franckewitz seeks $1 million for each month he was at BCBIC without religious services and an order from this Court requiring immediate reimplementation of church services. *Id.* at 5. The only named defendant is the Warden. In response to the complaint, the Warden filed a motion to dismiss or, in the alternative, for summary judgment. ECF 18. Franckewitz opposed the motion, ECF 20, and the Warden filed a reply, ECF 25. Franckewitz also has filed motions to subpoena evidence, ECF 21 & 29, and to

appoint counsel, ECF 8 & 23. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Warden's motion to dismiss is granted, and Franckewitz's motions are denied.

## II. Standard of Review

The Court decides the Warden's motion under Rule 12(b)(6). Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917

F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

The Court considers the complaint "in its entirety." *KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 607 (4th Cir. 2021) (quoting *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to

and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b).[1]

## III. Discussion

Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

Franckewitz brings two claims against the Warden under § 1983. First, he asserts that the denial of any opportunity to attend religious services violated his First Amendment right to free

[1] In deciding the motion to dismiss, the Court will not consider the evidence submitted by the Warden in support of his alternative motion for summary judgment. The Warden seeks summary judgment on the ground that Franckewitz failed to exhaust his administrative remedies at BCBIC before filing the complaint. ECF 18-2, at 11–15. To determine whether Franckewitz exhausted his administrative remedies—and whether any failure to exhaust is excused because remedies were unavailable—the Court would need to look beyond the pleadings and to the record. *See, e.g.*, *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Deciding the exhaustion question and considering evidence are unnecessary because the Court grants the Warden's motion to dismiss under Rule 12(b)(6) for failure to state a claim. Franckewitz's motion to subpoena evidence is denied as moot.

exercise of religion. Second, he maintains that the failure to provide him with a grievance appeal form violated his Fourteenth Amendment right to due process.

**A. First Amendment Claim**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quotation marks omitted). However, incarcerated individuals retain a right to reasonable opportunities for free exercise of religious beliefs, without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *see Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021) (recognizing that prisoners enjoy certain constitutional rights).

Franckewitz appears to assert a First Amendment claim against the Warden in his official and individual capacities. Though Franckewitz does not use the terms "official capacity" and "individual capacity," the Court construes his complaint in that manner because he seeks injunctive relief and damages. Under § 1983, the Warden may be sued for injunctive relief in his official capacity, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989), and for damages in his individual capacity, *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Both types of claims fail.

Start with the official capacity claim against the Warden. "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will*, 491 U.S. at 71. The Warden is a state official. So Franckewitz's claims against the Warden in his official capacity are claims against the State of Maryland. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

(1984). Though the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (2024), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, the state has not consented to § 1983 actions in federal court.

In addition to consent, there are two other exceptions to Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). The first exception, abrogation by Congress, does not apply here. Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will*, 491 U.S. at 66. The second exception, prospective relief, does apply here. Franckewitz requests "the immediate reimplementation of church services." ECF 1, at 5. Even so, Franckewitz's official capacity claim against the Warden for prospective injunctive relief fails because the claim is moot.

A claim is moot "[w]hen a . . . controversy ceases to exist—either due to a change in the facts or the law." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017). Mootness means the plaintiff no longer has the legally recognized "personal interest" required for standing, and as a result, the Court no longer has subject matter jurisdiction. *Id.* (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)); *see Powell v. McCormack*, 395 U.S. 486, 496 (1969); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice,

absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007).

When Franckewitz filed this lawsuit on February 6, 2024, he was detained at BCBIC. ECF 1, at 2. At some point thereafter, Franckewitz was transferred to another pretrial detention facility, CDF. *See Incarcerated Individual Locator*, DPSCS, https://www.dpscs.state.md.us/services/ii-locator.shtml [https://perma.cc/YF5Q-94NV] (last visited Sept. 17, 2025) (listing Franckewitz as detained at CDF).[2] Franckewitz does not allege that his constitutional rights were violated at CDF. On the face of the complaint, then, it appears that Franckewitz— having been transferred from BCBIC to another detention facility—"is free of the policy or practice that provoked his lawsuit in the first place." *Incumaa*, 507 F.3d at 287. He "no longer has a legally cognizable interest in a judicial decision on the merits of his claim" for injunctive relief against the Warden at BCBIC. *Id.* His request for injunctive relief is moot because any injunctive relief ordered in his favor "would have no practical impact on [his] rights and would not redress in any way the injury he originally asserted." *Id.* Franckewitz's claim for injunctive relief against the Warden in his official capacity

[2] Pursuant to Federal Rule of Evidence 201(b)(2), the Court takes judicial notice of the fact that Franckewitz was transferred to CDF and may consider that fact without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *Zak*, 780 F.3d at 607.

is moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that transfer moots § 1983 claim for injunctive relief).[3] This claim is dismissed.[4]

Next, the individual capacity claim against the Warden. To establish personal liability under § 1983, a plaintiff must prove the defendant acted or failed to act. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no respondeat superior liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officers like the Warden

---

[3] If Franckewitz demonstrated that the challenged action was "capable of repetition, yet evading review," his claim would not be moot. *Incumaa*, 507 F.3d at 289 (quoting *Fed. Election Comm'n v. Wis. Right to Life*, *Inc.*, 551 U.S. 449, 462 (2007)). Such a showing requires a "'demonstrated probability'" that the allegedly improper action "will recur again, and to the same complainant." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 483 (1982) (per curiam)). Franckewitz has not alleged that the action will recur. He does not allege that he may return to BCBIC and, in any event, the sheer possibility that Franckewitz may return to BCBIC is too speculative to show the challenged action is capable of repetition yet evading review. *See Los Angeles v. Lyons,* 461 U.S. 95, 105–08 (1983) (holding that Lyons did not have standing to seek an injunction prohibiting the Los Angeles Police Department from using chokeholds because he could not establish that he would be subjected to a chokehold in the future); *O'Shea v. Littleton,* 414 U.S. 488, 497 (1974) (holding that no case or controversy existed to issue injunction about the enforcement of criminal laws because the Court assumed that "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners").

[4] In his opposition, Franckewitz appears to assert, for the first time, a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), and an equal protection claim under the Fourteenth Amendment. ECF 20, at 6. These claims were not raised in his complaint and will not be considered. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating it is "axiomatic" that a plaintiff may not use their memorandum in opposition to amend the complaint). In any event, a RLUIPA claim, which would be limited to equitable relief, would be moot because Franckewitz is no longer incarcerated at BCBIC and he has not shown that the Warden's action is "capable of repetition, yet evading review." *See Incumaa*, 507 F.3d at 289 (quoting *Fed. Election Comm'n*, 551 U.S. at 462); *Rendelman*, 569 F.3d at 186 (transfer moots claim for injunctive relief); *see also Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (RLUIPA does not authorize claims for official capacity damages); *Rendelman*, 569 F.3d at 189 (RLUIPA does not authorize claims for individual capacity damages).

may be found personally liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quotation marks omitted).

Even if supervisors like the Warden did not personally act, they may be held responsible under a supervisor theory of liability. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) "the supervisor had actual or constructive knowledge" that a subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Franckewitz has not alleged the Warden was personally involved in the alleged First Amendment violation. Franckewitz also has not alleged that the Warden, in his supervisory role, was deliberately indifferent to or tacitly authorized a subordinate's conduct that posed a pervasive and unreasonable risk of constitutional injury to Franckewitz. Because Franckewitz failed to allege

either personal or supervisory liability, his First Amendment claim against the Warden in his individual capacity is dismissed.

**B. Due Process Claim**

Franckewitz asserts that the failure to provide him with a grievance appeal form "infring[ed] upon [his] right of due process." ECF 1, at 4. The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Franckewitz's due process claim fails there. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Franckewitz has not alleged a due process claim.

If Franckewitz asserts that the Warden violated state laws or prison policies relating to the grievance process, such violations do not provide a basis for a due process violation because failure to abide by state law or prison policy is not itself a constitutional violation. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("[P]rison officials' failure to follow internal prison policies are

not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation.”).

## IV. Conclusion

The Warden’s motion to dismiss is granted. Franckewitz’s motions to subpoena evidence and to appoint counsel are denied. A separate Order follows.

September 17, 2025
Date

Deborah L. Boardman
United States District Judge